# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

JOHN G.,

      Plaintiff,

v.                          Civil Action 2:22-cv-2105
                            Judge Algenon L. Marbley
                            Magistrate Judge Kimberly A. Jolson

COMMISSIONER OF
SOCIAL SECURITY,

      Defendant.

## REPORT AND RECOMMENDATION

Plaintiff, John G., brings this action under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income ("SSI"). For the following reasons, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

**I.     BACKGROUND**

Plaintiff protectively filed his application for SSI on August 20, 2019, alleging that he was disabled beginning September 15, 2016, due to major depression, generalized anxiety, agoraphobia, hypertension, severe sleep apnea, morbid obesity, severe back and knee pain, diabetic, GERD, and restless leg syndrome. (R. at 317–25, 361). After his application was denied initially and on reconsideration, the Administrative Law Judge (the "ALJ") held a telephone hearing on January 21, 2021. (R. at 145–77). The ALJ denied benefits in a written decision on March 24, 2021. (R. at 20–40). When the Appeals Council denied review, that denial became the final decision of the Commissioner. (R. at 5–13).

Next, Plaintiff brought this action. (Doc. 1). As required, the Commissioner filed the administrative record, and the matter has been fully briefed. (Docs. 9, 10, 11).

### A. Relevant Statements to the Agency and Hearing Testimony

The ALJ summarized Plaintiff's hearing testimony as well as his statements to the agency:

[Plaintiff] alleged disability due to limitations on sitting and standing due to back pain and due to drowsiness caused by difficulty breathing (Ex. 4E). However, his testimony at the hearing primarily concerned allegations of limitation in use of his hands and mental limitations from anxiety. Despite his complaints of anxiety, he testified that he no longer takes his medication or receives counseling, because he felt they were not helping. He testified to residual pain in his ankle from an injury and subsequent July 2020 surgery. He testified that he does not do much on a daily basis because of limitations on standing and for long periods. He testified that a friend does all his cooking and cleaning and, while he can fold laundry while seated, he primarily watches television and browses the internet on his phone. He contracted COVID-19 in December 2020, but testified that he recovered well after a three[-]or[-]four day hospital stay.

(R. at 29–30).

### B. Relevant Medical Evidence

The ALJ discussed Plaintiff's mental health impairments as follows:

A December 2018 mental status examination suggests [Plaintiff] has reading comprehension issues and borderline intelligence, though the remainder of the record suggests nothing so severe (Ex. 1F). [Plaintiff] is consistently noted to have no significant psychological abnormalities on examination (e.g., Ex. 19F, 21F). [Plaintiff]'s mental symptoms appear to be adequately controlled with his current course of treatment, but the undersigned has nonetheless assessed considerable mental limitations in the residual functional capacity. These limitations accommodate reported limitations on cognition, memory, concentration, work pace, and social functioning that could be expected given [Plaintiff]'s diagnosed mood and anxiety disorders and the contributory effects on his mental status of symptoms of his physical impairments, such as pain and drowsiness, as well as side effects of his medications.

(R. at 32).

### C. The ALJ's Decision

The ALJ found that Plaintiff has not engaged in substantial gainful activity since August 20, 2019, the application date. (R. at 25). The ALJ determined that Plaintiff suffered from the following severe impairments: degenerative disc disease; depression; anxiety; learning disorder;

polyneuropathy; obesity. (*Id.*). The ALJ, however, found that none of Plaintiff's impairments, either singly or in combination, met or medically equaled a listed impairment. (R. at 27).

As to Plaintiff's residual functional capacity ("RFC"), the ALJ opined:

> [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) with the following additional limitations: occasional climbing ramps and stairs; never climbing ladders, ropes, and scaffolds; occasional stooping, kneeling, crouching, and crawling; frequent handling and fingering bilaterally; avoiding all exposure to unprotected heights and moving mechanical parts; work performed in an environment that does not require more than the ability to perform one- to three-step tasks with only occasional interaction with coworkers, supervisors, and the public, no strict hourly production quotas, and few changes in day-to-day work expectations.

(R. at 29).

Upon "careful consideration of the evidence," the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record." (R. at 30).

Relying on the vocational expert's testimony, the ALJ concluded that Plaintiff could not perform his past relevant work as a fast-food cook or forklift driver. (R. at 33). The ALJ determined that Plaintiff could perform light exertional, unskilled jobs that exist in significant numbers in the national economy, such as a packer, sorter, or assembler. (R. at 34). She therefore concluded that Plaintiff "has not been under a disability, as defined in the Social Security Act, since August 20, 2019, the date the application was filed (20 CFR 416.920(g))." (R. at 34).

## II. STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  The Commissioner's findings of fact must also be based upon the record as a whole. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985).  To this end, the Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *Rhodes v. Comm'r of Soc. Sec.*, No. 2:13-cv-1147, 2015 WL 4881574, at *2 (S.D. Ohio Aug. 17, 2015).

## III.  DISCUSSION

In his Statement of Errors, Plaintiff contends that the ALJ erred in determining his RFC, specifically as to his analysis of the state agency psychologists' opinions, who found that Plaintiff should be limited to superficial social interaction. (Doc. 10 at 7–10).  The Commissioner counters that the ALJ considered all evidence in the record, and adequately explained her reasoning for not adopting the state agency limitation to superficial interaction. (Doc. 11 at 4–5).

### A.  Plaintiff's RFC Determination

Because Plaintiff filed his application after March 27, 2017, it is governed by the relatively new regulations describing how evidence is categorized, considered, and articulated when an RFC is assessed.  *See* 20 C.F.R. § 416.913(a), 416.920c (2017).  A claimant's RFC is an assessment of "the most [he] can still do despite [his] limitations." 20 C.F.R. § 416.945(a)(1) (2012).  A claimant's RFC assessment must be based on all the relevant evidence in his or her case file.  *Id*.; *see also* 20 C.F.R. §§ 416.913(a), 416.920c (2017).   The governing regulations describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings.[1]

---

[1] The regulations define prior administrative findings:

20 C.F.R. § 416.913(a)(1)–(5). Regarding two of these categories—medical opinions and prior administrative findings—an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [the [Plaintiff]'s] medical sources." 20 C.F.R. § 416.920c(a). Instead, an ALJ must use the following factors when considering medical opinions or administrative findings: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with the [Plaintiff]"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability programs policies and evidentiary requirements." 20 C.F.R. § 416.920c(c)(1)–(5).

Supportability and consistency are the most important of the five factors, and the ALJ must explain how they were considered. 20 C.F.R. § 416.920c(b)(2). When evaluating supportability, the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support the medical opinion, the more persuasive the ALJ should find the medical opinion. 20 C.F.R. § 416.920c(c)(1). When evaluating consistency, the more consistent a medical opinion is with the evidence from other medical sources and nonmedical sources in the record, the more persuasive the ALJ should find the medical opinion. 20 C.F.R. § 416.920c(c)(2). An ALJ may discuss how he or she evaluated the other factors but is generally not required to do so. 20 C.F.R. § 416.920c(b)(2).

Thus, the role of the ALJ is to articulate how she considered medical opinions and how persuasive she found the medical opinions to be. *Holston v. Saul*, No. 1:20-CV-1001, 2021 WL

---

A prior administrative finding is a finding, other than the ultimate determination about whether you are disabled, about a medical issue made by our Federal and State agency medical and psychological consultants at a prior level of review (see § 416.1400) in your current claim based on their review of the evidence in your case record . . .

§ 416.913(a)(2), (5).

5

1877173, at *11 (N.D. Ohio Apr. 20, 2021), *report and recommendation adopted*, No. 1:20 CV 1001, 2021 WL 1863256 (N.D. Ohio May 10, 2021). The role of the Court is not to reweigh the evidence, but to make sure the ALJ considered the proper factors and supported the conclusion with substantial evidence. *Id.*, at *14.

Here, the ALJ determined that Plaintiff had the RFC to perform work limited to occasional social interaction. (R. at 32). Plaintiff argues that the ALJ failed to properly evaluate the opinions of the two state agency psychologists (Doc. 10 at 7–10), who opined in September and December of 2019 that Plaintiff can perform work "in an environment that has only occasional social interaction demands and that does not require interaction beyond a superficial level" (R. 204, 214). In other words, the ALJ adopted the opined limitation regarding *how often* Plaintiff could be expected to interact socially, but not the opined limitation regarding the *quality* of such interaction. *See, e.g., Corey v. Comm'r of Soc. Sec.*, No. 2:18-cv-1219, 2019 WL 3226945, at *4 (S.D. Ohio, July 17, 2019); *Lindsey v. Comm'r of Soc. Sec.*, No. 2:18-cv-18, 2018 WL 6257432, at *4 (S.D. Ohio Nov. 30, 2018) (describing occasional social contact as a quantitative measure, and superficial social contact as a qualitative measure).

Notably, Plaintiff "is not arguing that the ALJ had to include the limitation to superficial interaction[,]" only that "[t]he ALJ failed to adequately explain why she was omitting a specific limitation opined by the Agency's own experts." (Doc. 10 at 9). Indeed, this Court has held that "the absence of any explanation" for omitting a superficial interaction limitation warrants remand. *Corey*, 2019 WL 3226945, at *4. But the Undersigned disagrees with Plaintiff's contention that the ALJ failed to explain her departure from the opined limitations and "failed to cite to a single piece of evidence" supporting such explanation. (Doc. 10 at 9).

Rather, the ALJ found the state agency psychologists' opinions to be only "somewhat

6

persuasive," because subsequent records of Plaintiff's normal behavior and mental status examinations demonstrated a capacity for social interaction beyond the superficial level. (R. at 32). The ALJ additionally found that Plaintiff maintained relationships with family and friends and did not consistently report symptoms in this area, such as irritability or social anxiety. (*Id.*) As such, the ALJ explained that she found the state agency psychologists' reports well supported by evidence available to them at the time, but not entirely consistent with the record as a whole—particularly because of the new medical record evidence that was unavailable to them. (*Id.*) The Undersigned finds that the ALJ did not err in explaining her decision to reject the exact limitations proposed by the state agency psychologists.

The ALJ was under no obligation to adopt the state agency psychologists' opinions in their entirety. *See Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 276 (6th Cir. 2015) ("Even where an ALJ provides 'great weight' to an opinion, there is no requirement that an ALJ adopt a state agency psychologist's opinion verbatim; nor is the ALJ required to adopt the state agency psychologist's limitations wholesale."); *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009) (noting that an ALJ "is not required to recite the medical opinion of a physician verbatim in his residual functional capacity finding."); *Ferguson v. Comm'r of Soc. Sec.*, No. 2:18-CV-1024, 2019 WL 2414684, at *5 (S.D. Ohio June 7, 2019) ("Nor, as the case law above makes clear, was the ALJ required to explain why he did not adopt their opinions in full."), *report and recommendation adopted sub nom. Ferguson v. Comm'r of Soc. Sec.*, No. 2:18-CV-1024, 2019 WL 3083112 (S.D. Ohio July 15, 2019). The state agency psychologists are non-treating sources, and the ALJ evaluated their opinions accordingly. Ultimately, she found their opinions inconsistent with other medical evidence in the record.

The ALJ cited particular evidence of Plaintiff's ability to interact with others in step two of

her analysis, along with providing a summary of the record before her in her determination of Plaintiff's RFC. (R. 28, 32). She noted that Plaintiff "alleged vague limitations" in interacting with others and had reported anxiety in crowds and with strangers. (R. 28) (citing R. 1016 ("[Plaintiff] has difficulties in crowds or around other people.")). Yet, she found those allegations inconsistent with stable mental status examinations throughout the record, as well as Plaintiff's own representations that he lived with friends. (*Id.*) (citing R. 369). In step four of her analysis, the ALJ again noted that Plaintiff maintained relationships with family and friends, and did not consistently report symptoms in social interactions. (R. 32). Notably, Plaintiff lived with his girlfriend, and reported a good relationship with her. (R. 857–58). Still more, the ALJ explained that the State agency psychologists' opinions were incomplete because of additional evidence added to the record after their opinions were made. (R. 32).

The state agency psychologists submitted their opinions on September 24, 2019 and December 6, 2019. But the ALJ reviewed substantial medical evidence created later that indicated Plaintiff's social interaction limitations were not as severe. For example, on February 26, 2020, Plaintiff denied experiencing *any* neurological or psychiatric symptoms while at a doctor's appointment (R. 1273 (encounter notes from Steven Kimberly, M.D.)). Five months later, while at another doctor's appointment on July 6, 2020, Plaintiff was described as alert with an appropriate mood and affect. (R. 1180 (encounter notes from Jane Anosike, PA)). On October 5, 2020, Plaintiff was described as "alert and oriented to person, place, and time," and had a normal mood and affect (R. 1089 (encounter notes from Courtney Bonner, DO, during an appointment for diabetes and hypertension related issues)). Nor are these records outliers. Rather, they are part of numerous observations of normal mood and affect by medical professionals after the state agency psychologists rendered their opinions. (*See, e.g.*, R. 1180, 1288, 1302, 1548, 1629, 1640). Finally,

8

Plaintiff testified at his hearing on January 21, 2021, that he lived with multiple friends. (R. 152). Reviewing the record as a whole, the ALJ concluded that the lack of behavioral abnormalities during doctor visits, stable mental status examinations, relationships with his family and girlfriend, and the fact that he lives with his friends indicates that Plaintiff is able to function in public adequately to meet the demands of his daily life, and can interact with others while working at an occasional level. In other words, the ALJ found that evidence of Plaintiff's ability to interact with others supported that he could "sustain[ ] more than shallow or cursory interactions with others," and therefore a superficial interaction limitation was not necessary. (Doc. 10-1 at 4) (Order of Appeals Council describing superficial interaction).

At base, Plaintiff wishes "the ALJ had interpreted the evidence differently." *Glasgow v. Comm'r of Soc. Sec.*, No. 2:15-CV-1831, 2016 WL 2935666, at *7 (S.D. Ohio May 20, 2016), report and recommendation adopted, No. 2:15-CV-01831, 2016 WL 4486936 (S.D. Ohio Aug. 26, 2016), aff'd, 690 F. App'x 385 (6th Cir. 2017). But the ALJ did not err, and the law prohibits the Court from reweighing the evidence and substituting its judgment for that of the ALJ. *See Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) (citing *Youghiogheny & Ohio Coal Co. v. Webb*, 49 F.3d 244, 246 (6th Cir. 1995) ("This court reviews the entire administrative record, but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ."). Ultimately, "[e]ven if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached." *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir.1999). The ALJ's conclusion has satisfied this burden.

IV. **CONCLUSION**

Based on the foregoing, it is **RECOMMENDED** that the Court **AFFIRM** the

Commissioner's decision.

## V. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed finding or recommendations to which objection is made, together with supporting authority for the objection(s).  A District Judge of this Court shall make a de novo determination of those portions of the Report or specific proposed findings or recommendations to which objection is made.  Upon proper objection, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions.  28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

IT IS SO ORDERED.

Date:   December 5, 2022                           /s/ Kimberly A. Jolson
                                                  KIMBERLY A. JOLSON
                                                  UNITED STATES MAGISTRATE JUDGE